United States Courts
Southern District of Texas
FILED

MAR 0 6 2026

Nathan Ochsner, Clerk of Court

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

TIMOTHY AGUILAR
    *Plaintiff*

v.

AMERICAN AUTOMOTIVE ALLIANCE, LLC
RONNIE MCGRAW
    *Defendants*

Case No. 2:CV__ CV 1840

JURY TRIAL DEMAND

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff in Pro Se, Timothy Aguilar, brings this Complaint against Defendant American Automotive Alliance, LLC ("Triple A") and Ronnie McGraw (hereinafter "McGraw") to stop their illegal practice of placing and or directing their unregistered telemarketers unsolicited and un-consented pestilence of illegal auto warranty and /or vehicle service contracts telemarketing calls to Plaintiff's phone number that has been registered on the National Do Not Call Registry (DNCR).

## NATURE OF THE ACTION

1. As part of their illegal marketing campaign, Defendants Triple A and/or their unregistered and unlicensed telemarketers placed a tsunami of unsolicited auto warranty calls to Plaintiff's DNCR phone number.

2. Defendant Triple A nor its unregistered telemarketers obtained any prior consent when placing these unsolicited telemarketing calls, and, therefore, are in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

3. Congress enacted the TCPA in 1991 in response to "a torrent of vociferous consumer complaints about intrusive robocalls." As such facts are dictated within this Complaint.

1 | Page

4.  The TCPA instructed the Federal Communications Commission ("FCC") to "prescribe regulations to implement methods and procedures for protecting the privacy rights [of consumers] . . . in an efficient, effective, and economic manner and without the imposition of any additional charge to telephone subscribers." 47 U.S.C. § 227(c)(2).

5.  The TCPA explicitly authorized the FCC to establish a "single national database" of telephone numbers belonging to those who object to receiving telephone solicitations. Id. § 227(c)(3).

6.  Despite repeated requests not to receive calls, Triple A and/or those calling on their behalf, kept calling Plaintiff's DNCR residential cell phone to solicit Triple A's auto warranty products and/or services.   At the time of filing this lawsuit, the pestilence of illegal robocalls from Triple A's have stopped apparently from the TCPA Notice of Intent to File Suit sent and the interaction with Triple A's counsel.

7.  Majority of Triple A's telemarketing calls were delivered to Plaintiff's DNCR phone number by a "spoofed" phone number that are not formally associated with any Triple A location.

8.  Defendant Triple A, it's unregistered agent(s), affiliates and or representatives did not obtain express written consent from Plaintiff prior to calling, initiating, delivering and or on their behalf, illegal telemarketing calls to his residential phone number while being on the DNCR, therefore, Triple A is liable under the TCPA and its implementing regulation. 47 C.F.R. § 64.1200(a)(2).

## PARTIES

9. Plaintiff is a natural person residing in Pasadena, Texas, 77503. 47 U.S.C. § 153 (39). At all times herein, Plaintiff is a resident of the Southern District of Texas and was present in Texas for all incoming calls.

10. Defendant American Automotive Alliance LLC (Triple A) is a for-profit company and headquartered St. Augustine, FL. Defendant may be served by delivering process to its registered agent of record, Douglas Law Firm – 117 N. 2nd Street – Palatka, FL 32177 or wherever else entity may be found.

11. Defendant Ronnie McGraw is the CEO and or Manager of Triple A and may be served by delivering process to the above listed registered agent of record – or wherever else and or location he may be found. McGraw is being sued individually.

12. Whenever it is alleged that any Defendant did any act, it is meant that the Defendant performed or participated in the act or that Defendant's officers, agents, sub-agents, employees, performed or participated in the act on behalf of and under the authority of a named Defendant.

## JURISDICTION AND VENUE

13. Jurisdiction: This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331, because the TCPA is a federal statute. 47 U.S.C. § 227; *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 386-87 (2012).

14. Supplemental Jurisdiction: The Court has jurisdiction pursuant to 28 U.S.C. § 1367(a) because Plaintiff's claims for violations of the Texas Business & Commerce Code, § 302.101 as these claims relate and or arise from the same nucleus of operative fact stated herein.

15.    Personal Jurisdiction: This Court has specific personal jurisdiction over named Defendant Triple A and McGraw because they directed their illegal conduct into Texas for the purposes of soliciting their auto warranty services and/or vehicle service contracts to Plaintiff using illegal telemarketing calls directed to the State of Texas area codes purposedly, while spoofing phone numbers and falsely representing themselves.

16.    Venue: Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims – namely the illegal telemarketing solicitation calls at issue – were orchestrated and or directed into this District.

## A.  THE TELEPHONE CONSUMER PROTECTION ACT – 47 U.S.C. § 227 *et seq.*

17.    A listing on the DNCR "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

18.    The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the DNCR and provides a private right of action against any entity or individual that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227( c)(5); 47 C.F.R. § 64.1200(c )(2).

19.    Federal regulations implementing the TCPA provide that "[t]he rules set forth in paragraph (c) and (d) of this section are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, "Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991.'" 47 C.F.R. § 64.1200(e).

20.    The FCC's regulations implementing the TCPA also require persons or other entities that make telemarketing calls to maintain company-specific do-not-call lists and to honor do-

not-call requests. 47 C.F.R. § 64.1200(d). Company-specific do-not-call requests must be honored for five years from the time the request is made. 47 C.F.R. § 64.1200(d)(6). Sellers must coordinate the do-not-call requests received by their telemarketers, so that all telemarketing calls on behalf of the seller cease if a consumer makes a do-not-call request to one of the seller's telemarketers immediately.

21. The FCC requires *"prior express written consent"* for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular: [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service. [1]

22. The FCC has defined prior express written consent in 47 C.F.R. § 64.1200(f)(9) as "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered."

---

[1] *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd 1830, 1844 (2012).

23.    Under the TCPA standard, the burden is on the Defendant named herein to demonstrate that Plaintiff gave his *prior express consent* to receive telemarketing calls featuring prerecorded message with artificial voices to his cellular or residential telephone, while being on national and state DNCR.

24.    A corporate officer, such as Defendant McGraw, who is involved in the direction, coordination, hiring, decision making of the illegal telemarketing at issue and or within the litigation may be personally liable under the TCPA. E.g., *Jackson Five Star Catering Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. Lexis 159985 @ *10 (E.D. Mich. Nov 8, 2013). Many courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." *Maryland v. Universal Elections*, 787 F.Supp. 2d 408, 415-16, (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force").

**B. Defendant(s) practices Spoofing in their daily telemarketing business activities**

25.    The practice of "spoofing" is used deceptively by scammers, including Triple A unregistered and unlicensed agents and or affiliates to manipulate the caller ID system, so it appears that their calls are from legitimate phone numbers [2] as the facts and solicitation calls demonstrate herein. Defendant McGraw approves of this illegal conduct.

---

[2] Caller ID "spoofing" occurs "when a caller deliberately falsifies the information transmitted to [a cell-phone owner's] caller ID display to disguise their identity." FCC, Caller ID Spoofing, https://www.fcc.gov/spoofing. The Federal Communications Commission has noted that "scammers often use neighbor spoofing so it appears that an incoming call is coming from a local number, or spoof a number from a company or a government agency that you may already know and trust." Id.; see, e.g., *Zelma v. Choice Energy, LLC*, Case No. 19-17535, 2020 WL 5201341, at *1 (D.N.J. Sept. 1, 2020)...

26. Triple A agents and or affiliate(s) have used DIDs for "neighbor" spoofing and/or "snowshoe" spoofing. Neighbor spoofing is the practice of using caller ID numbers with the same area code and same or similar three-digit exchange as the call recipient to increase the odds of the call recipient answering the call due to the belief that the call is originating from the local area. Snowshoe spoofing is the practice of using massive quantities of unique numbers for caller ID on a short-term or rotating basis to evade behavioral analytics detection, or to bypass or hinder call blocking or call labeling analytics based on the origination numbers.

27. Numbers used for snowshoeing are often numbers that cannot receive incoming calls. Triple A's unregistered telemarketers and/or lead generators herein have actively participated in the initiation of, assisted and or facilitated in the initiation of, and delivery of illegal vehicle service contract calls to plaintiff's DNCR phone number and such calls are meant to cause harm and injury upon Plaintiff.

28. Illegal telemarketers frequently use caller ID spoofing to impersonate trusted organizations such as law enforcement, government agencies, and large corporations.

29. Patterns of neighbor spoofing or impersonating trusted numbers are easy to detect when present in caller detail records ("CDR's") and indicate that the upstream provider is sending illegal calls across the downstream provider's network.

30. Given how prolific caller ID spoofing and unsolicited calls are, it's difficult for plaintiff to tell which incoming phone calls are "regular," legitimate calls, which calls are unsolicited telemarketing and which are outright fraud.

**31.** As Triple A are acutely aware, it is the practice of the telemarketers and or lead generators who solicit Defendant's remodeling services to spoof caller ID's, to change caller ID's in disparate calls so that the recipient of their calls cannot tell who is calling before answering.

**32.** Triple A's exercises a common practice and or scheme in spoofing Caller ID's to call Plaintiff, to make it appear that such calls are being made locally and/or within the United States and not abroad.

**33.** The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are made. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

## FACTUAL ALLEGATIONS

**34.** Triple A demonstrated, during the tele-sale solicitation of their auto warranty to Plaintiff, upon information and belief, a false logo that is not theirs but displayed in an effort to create the deceptive illusion that makes the buyer of the auto warranty believe that Triple A is directly in partnership with the real and legitimate Triple AAA entity as Plaintiff received from present Defendant Triple A. **Exhibit 1**   The triple AAA trademark logo displayed within Exhibit 1 is actually from the real American Automobile Association (the real Triple A) AAA.[3]  Exhibit 1 is a true and correct copy of an original that Plaintiff was sent  by Defendant Triple A electronically on January 14, 2026 and showed policy number AMR58389.  Surely, the real Triple A is not in the business of making and or delivering illegal telemarketing solicitations to individuals on the national DNCR.

---

[3] https://membership.aaa.com/(last visited February 4, 2026)

36. Plaintiff's telephone number 832-XXX-7311 is a residential telephone number and is used for communicating with friends and family, navigation purposes, reading local news, sending and receiving emails, paying bills (electric, gas, mortgage, car payment) attributable to plaintiff's residence, sending and receiving text messages to family and friends, Plaintiff pays for his cellphone from his personal checking account and not used for business purposes.

37. Triple A is a seller of auto warranties services and/or vehicle service contracts and engaged in soliciting individuals and or consumers via tele-sales and deceptive robocalls. Part of Triple A's marketing strategies is to allow the use of deceptive business names (Dealer Services) by their unlicensed telemarketers in an attempt to establish a business relationship with consumers, utilizing malicious spoofing and with total blatant disregard for individuals on the federal and or state DNCR. Therefore, Triple A is subject to the federal restrictions under 47 U.S.C. § 227 et seq of the TCPA and not immune to this strict liability statute. See also § 47 C.F.R. § 64.1200(c) and (d) and a jury should be allowed to see the fraudulent activity and evidence that this entity and CEO are practicing to consumers across the United States.

38. Despite that, the Plaintiff received the illegal auto warranty telemarketing calls from Triple A and had made DNC requests not to be called again, the deceptive auto warranty calls continued.

39. Plaintiff has verbally told Triple A telemarketers to stop calling him since about May of 2025 and has verbally stated that: (1) plaintiff is on the national and state do not call registries; (2) to place plaintiff on their internal do not call list. All requests have been

blatantly disregarded by Triple A's unregistered and unlicensed telemarketers in a callous disregard of the rules and regulations of the TCPA.

40. Plaintiff directly registered his phone number on the national DNCR himself on or about September 2012. *See* **Exhibit 2.** Plaintiff also registered his phone number on the State of Texas do not call List in August 2023. *See* **Exhibit 3**.

41. Plaintiff never asked and or requested the National Do-Not- Call Registry administrator to remove him from the national Do Not Call Registry, further, Plaintiff was on the national DNCR at all times relevant to this Complaint.

42. Upon information and belief, Triple A and/or McGraw have contact and/or calling lists to thousands of consumers residential DNCR phone numbers.

43. Upon information and belief, Triple A and/or McGraw instruct their unregistered and unlicensed telemarketer to call the DNCR phone numbers on the calling lists provided.

44. Upon information and belief, Defendant Triple A and/or McGraw provide their unregistered telemarketer's with qualifications a consumer must meet to qualify for Triple A's auto warranty and/or vehicle service contract services and prior to being transferred to a closing agent.

45. Upon information and belief, Defendants Triple A and/or McGraw authorizes their unregistered telemarketers to act as an agent by instructing the telemarketer to live transfer any hot leads to a actual representative for Triple A and to remain on the phone transfer.

46. Upon information and belief, Defendant Triple A and/or McGraw pay their unregistered and unlicensed telemarketer a commission for every new lead they retain for Defendants.

47. Upon Triple A's direction, the unregistered telemarketer is allowed to use a fictitious name of "Dealer Services" while making unsolicited telemarketing calls to avoid TCPA liability.

48.    Triple A's unregistered telemarketer's also make verbal statements that they are part of Lincoln warranty or financial services.

49.    Upon information and belief, Defendants Triple A and McGraw have generated substantial profit gains by violating the TCPA and generating new clients and or telemarketing leads through illegal telemarketing.

50.    Despite Plaintiff's DNCR phone number being registered on the National Do Not Call Registry, Plaintiff fell victim to Defendants marketing campaign by receiving unsolicited telemarketing calls.

51.    Upon information and belief, the following listed below is a summary of the incoming telephone solicitation calls placed (47 U.S.C. § 227(a)(4); 47 C.F.R. § 1200(f)(14), initiated, and made on behalf of Triple A and/or by McGraw (known at this time without discovery and or subpoenas being issued) to the plaintiff's DNCR phone number:

(a) On May 6, 2025, Plaintiff received a unsolicited auto warranty telemarketing call from a spoofed number CID # of 1-832-321-3530 at 4:59 pm from a unregistered telemarketer named Jennifer and a verbal do not call request was made to this telemarketer.

(b) On November 13, 2025, Plaintiff received a unsolicited auto warranty telemarketing call from a spoofed number CID # of 1-517-237-0881 at 1:29 pm from a unregistered telemarketer named Jaydon who identified the calling entity as "Dealer Services." [4] (RC)

(c) On November 17, 2025, Plaintiff received a unsolicited auto warranty telemarketing call from a spoofed number CID # of 1-713-379-7305 at 9:43 am from a unregistered telemarketer named Chet Wilson who identified the calling entity as "Dealer Services."

(d) On November 20, 2025, Plaintiff received a unsolicited auto warranty telemarketing call from a spoofed number CID # of 1-445-203-6166 at 11:06 am from a unregistered telemarketer named Ceasar who identified the calling entity as "Dealer Service." That was working directly with Lincoln and that Plaintiff's warranty was not force. (RC)

---

[4] RC means the illegal telemarketing call received from Triple A's unregistered telemarketer was recorded

(e) Cesar sent a text message from 855-975-7484 at 11:27 am and the company name identified in this text message reflects "American Home & Auto Alliance" and further in the text shows "American Automotive Alliance."  See Exhibit 3.1

(f)  On November 20, 2025, Plaintiff received a missed call from CID # 239-323-4618 at 3:50 pm.

(g) On November 20, 2025, Plaintiff received a unsolicited auto warranty telemarketing call from a spoofed number CID # of 1-239-323-4618 at 3:51 pm from a unregistered telemarketer named Frank Flores who identified the calling entity as "Dealer Services." (RC)

(h) On November 21, 2025, Plaintiff received a unsolicited auto warranty telemarketing call from a spoofed number CID # of 1-832-346-0105 at 12:29 pm from a unregistered telemarketer named Logan.

(i) On November 25, 2025, Plaintiff received a unsolicited auto warranty telemarketing call from a spoofed number CID # of 1-253-210-4680 at 9:38 am from a unregistered telemarketer named Luis who identified the calling entity as "American Automotive Alliance"  and inquired if Plaintiff had received documents via the US mail. (RC)

(j) On December 1, 2025, Plaintiff received a unsolicited auto warranty telemarketing call from a spoofed number CID # of 1-239-444-7629 at 4:24 pm from a unregistered telemarketer named Michael who identified the calling entity as "American Auto Alliance" working with Lincoln Capital.  (RC)

(k) On December 2, 2025, Plaintiff received a unsolicited auto warranty telemarketing call from a spoofed number CID # of 1-713-379-7561 at 4:34 pm from a unregistered telemarketer named Daniel who identified the calling entity as "Dealer Services."(RC)

(l) On December 4, 2025, Plaintiff received a unsolicited auto warranty telemarketing call from a spoofed number CID # of 1-239-323-4929 at 10:00 am from a unregistered telemarketer named Alex who identified the calling entity as "Dealer Services." (RC)

(m)On December 18, 2025, Plaintiff received a unsolicited auto warranty telemarketing call from a spoofed number CID # of 1-713-239-3758 at 3:22 pm from a unregistered telemarketer named Elijah who identified the calling entity as "Lincoln Services."(RC)

(n) On December 29, 2025, Plaintiff received a unsolicited auto warranty telemarketing call from a spoofed number CID # of 1-272-203-5804 at 9:37 am from a unregistered telemarketer named George who identified the calling entity as "Service Dept." (RC)

(o) On December 29, 2025, Plaintiff received a unsolicited auto warranty telemarketing call from a spoofed number CID # of 1- 832-333-2798 at 5:45 pm from a unregistered telemarketer named Chris who identified the calling entity as "Auto Services and Dealer Services."

(p) On December 30, 2025, Plaintiff received back to back calls from Triple A telemarketers from CID # 239-323-4894 at 12:20 pm, 12;21 pm and 12:30 pm.

(q) On January 14, 2026, Plaintiff received a unsolicited auto warranty telemarketing call from a spoofed number CID # of 1-201-502-9617 at 2:26 pm from unregistered telemarketer named Gabriel who identified the calling entity as "Triple A" and asked if documents had been received via the US mail. Knowing very well there was "never" nothing transmitted via the United States Postal Service. Gabriel advised Plaintiff's auto warranty is no longer in effect. A false statement. Gabriel transferred the call to Emily to close the tele-sale – Plaintiff bought the auto warranty to discover who the TCPA violator was. Emily provided policy number, claims phone number 877-850-0443 roadside number of 877-553-0531. (RC) In hopes of discovering the TCPA violator, Plaintiff bought the policy.[5]

(r) Within the hour of the auto warranty being purchased to discover the identity of the TCPA violator, Plaintiff received an email from Emily, Operations Manager at supervision.3a@gmail.com as attached herein in Exhibit 1.

52. All these auto warranty and/or vehicle service contract solicitation calls received and/or delivered to Plaintiff's DNCR phone number followed the same telemarketing script in soliciting Triple A's illegal and deceptive auto warranty telemarketing campaign.

53. Upon information and belief, Triple A hires and authorize their (3rd) party unregistered telemarketers to make, facilitate and or deliver illegal robocalls soliciting "auto warranty" on their behalf.

54. Upon information and belief, Triple A and or McGraw approve the contracts with present unregistered telemarketers, lead generators and or DOE telemarketers.

---

[5] "The fact that Plaintiff "plays along" with telemarketing scripts to find out who [they] really are is not deceptive. A plaintiff must know the name of the telemarketer that violated the TCPA in order to bring suit against it, and the content of the message can help prove that it was a solicitation. *Shelton v. Nat'l Gas & Elec. LLC.* No. 17-4063, 2019 U.D. Dist. LEXIS 59235 @ *12 (E.D. Pa. Apr. 5, 2019).

55.    Upon information and belief, Triple A  and or McGraw authorize the payments to the telemarketers.

56.    Upon information and belief,  Triple A and/or McGraw  pays the telemarketers from the corporate and or commercial bank accounts they control.

57.    Upon information and belief, Triple A and or McGraw have a degree of control over the telemarketers who solicit and promote their services upon Triple A's behalf.  Triple A has the authority to stop the illegal phone calls that violate the TCPA, but for the *substantial profits* they reap monthly, they utterly refuse to stop the onslaught of illegal auto warranty solicitation calls by their telemarketers regardless if plaintiff is on the state and national DNCR and violating the TCPA is of no consequence.

58.    Upon information and belief, the calls relevant to this complaint herein, were received and delivered to plaintiff's residential phone number by Triple A's telemarketers calling on behalf and or being directed by Triple A and/or McGraw who have manifestly assented to their telemarketer(s) and or agent(s) to act upon Triple A's behalf, who being the principal, controls the telemarketers actions.  The auto warranty attached hereto as **Exhibit** 4 is a true and correct copy of such warranty obtained by Plaintiff in discovering who the TCPA violator was.

59.    Plaintiff also received a letter from Triple A's product specialist Frank Aldana. **See Exhibit 5.**

60.    Triple A has the telemarketing technology that allows its telemarketers and Triple A's agents and or employees to merge and or live transfer telemarketing calls to each other.

61. Upon information and belief, Triple A and/or McGraw controls and directs the content of the auto warranty "telephone scripts" in order to hide their true identity and dodge and or evade TCPA liability for violating the TCPA on a daily basis.

62. At all times relevant to this Complaint herein, acting alone or in concert with others, Triple A and/or McGraw formulated, directed, controlled, had the authority to control, or participated in the acts and practices including the violative acts or practices set forth herein that violate the TCPA.

63. Triple A and/or McGraw, control the day-to-day operations and directs their employees, sub-agents, lead generators, salespersons and solicitors to make TCPA violating phone calls daily and solicit their auto warranty services on their behalf.

64. Plaintiff asserts that should Defendant attempt to inject any further bald-face assertions about prior express consent during any and all incoming auto warranty calls from their telemarketers, the required written disclosures outlined in § 64.1200(f)(9)(i) of the TCPA cannot be provided via voice recording. Any and all disclosures were not adequately provided, any voice recording regarding consent cannot constitute a valid written signature.

65. Triple A and or its agent(s) purposefully availed themselves of the forum state (Texas) by specifically targeting Plaintiff's DNCR phone number and manipulating Texas area codes with spoofed phone numbers to deceive and or trick this plaintiff into thinking the harassing robocalls are local. 832 & 281 are local area codes within the State of Texas, Harris County calling prefixes. Triple A's DOE telemarketers use VoIP providers (*identity of VoIP providers only known to these Defendants*) with the intent of promoting Triple A's auto warranty and/or vehicle service contracts services.

66.   The illegal un-solicited and un-consented telemarketing calls that Plaintiff received to his DNCR phone number on behalf of Triple A herein, were placed while knowingly ignoring the national DNCR.  The illegal telemarketing calls were placed without training their agents and or sub-agents, having no policies and or procedures in place on the use of an internal do-not-call policy and the federal DNCR.

67.   Triple A and or it's agent(s) participated in, facilitated, directed, authorized, knew of and or willfully ignored the spoofing federal and state laws, misleading tele-sales practices and unlawful telemarketing practices, while knowing concrete facts that required a reasonable person to investigate further, but for such violations of state and federal TCPA laws, approved and ratified the conduct of their employees, sub-agents, agents and employees to engage in such unlawful telemarketing.

68.    Triple A, their agent(s) refusal to take any action to stop or curtail the unlawful tele-sales practices that violate the TCPA is based on these illegal practices that benefit Triple A financially.  Moreover, Triple A has been aware of the TCPA violating phone calls made by salespersons and or lead generators, telemarketers for years and has ratified such illegal behavior by maintaining  such telemarketers  responsible for TCPA violations and continuing to accept leads and/or referrals despite the actual knowledge of these violations and being hailed into federal court on class actions.  Cf. *Antwane Johnson v. American Automotive Alliance, LLC*, Civil # 3:24-cv-01064, USDC, Middle District of Florida; *Laraine Wood v. American Auto Alliance LLC*, Civil # 2;21—cv-01176, USDC, District of Arizona; *Lanika Office v. American Automotive Alliance LLC*, Civil # 8:26-cv-00429, USDC, Middle District of Florida.

69.    Triple A's telemarketers nor McGraw do not have a solicitation registration certificate on file with the Texas Secretary of State ("TSS") as required to make telephone solicitations to Texas residents either directly or through its telemarketers that have called Plaintiff in violation of the state and national DNCR.

70.    Moreover, none of Triple's A agents, lead generators are further registered with the State of Texas Department of Licensing and Regulation ("TDLR") [6] as vehicle service contract providers.

71.    Defendant's calls were not made for "emergency purposes."

72.    Upon information and belief, Defendant Triple A does not have a written policy for maintaining an internal do not call list pursuant to 47 U.S.C. § 64.1200(d)(1) after request was made on January 18, 2025.

73.    For more than twenty years, the FCC has explained that's its "rules generally establish that the party on whose behalf a solicitation is made bears the ultimate responsibility for any violations." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act,* 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

74.    The FCC has instructed that sellers such as Triple A *may not* avoid liability by outsourcing telemarketing to third parties, such as DOE telemarking companies. *In re DISH Network, LLC,* 28 FCC Rcd. 6574, 6588 ¶ 37 (2013).

75.    In 2013, the FCC held that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either 227(b) or section 227(c) that are committed by third-party telemarketers." *Id.* at 6574 ¶ 1

---

[6] https://www.tdlr.texas.gov/LicenseSearch/?program=SCP (last visited March 5, 2026)

76.    Triple A and/or their agent(s) are directly involved in hiring lead generator(s) and or telemarketing companies that make non-consent TCPA violation phone calls to potential consumers, vet potential clients, and only sell or transfer the qualifying ones.

77.    Triple A would not compensate DOE telemarketers and or agent(s) for the illegal auto warranty solicitation call made unless the lead(s) purchased met the tele-sales criteria established and or set forth.

78.    A reasonable seller whose telemarketers are making calls would investigate into the reasons why they would be calling numbers on the DNCR, and, moreover, an individual who has made requests to stop calling.

79.    Triple A, and affiliates and or agents could have investigated if the live transfer of calls it was receiving were on the DNCR, but it failed to do so. They have the technology at their disposal but refuse to use it.

80.    As such, Triple A, knowingly ratified their telemarketing agent(s) and or DOE telemarketing agent(s) illegal TCPA conduct.

81.    Triple A also ratified agent(s) and or DOE telemarketers illegal TCPA conduct because, with knowledge of Plaintiff's residential phone number being on the federal and state's DNCR.

82.    Triple A accepted the illegal leads that documented plaintiff's DNCR phone number and then utilized it for a benefit by continuing to promote its auto warranty products and/or services to him.

83.    The 2013 FCC ruling holds that called parties may obtain "evidence of these kinds of relationships … through discovery, if they are not independently privy to such information." *In re Dish Network*, 28 FCC Rcd. 6592-93 ¶ 46. Evidence of circumstances

pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller to the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

84.   Plaintiff, has been harmed by the acts of Triple A and McGraw's because his privacy rights have been violated, being annoyed and harassed by these illegal auto warranty solicitation calls that should had never taken place had Triple A had sufficient policies and/or procedures in place.  Such illegals calls mentioned herein are another example of the *clear and present danger to public safety* that Triple A promotes daily without penalty and with a callous disregard to a strict liability statute.

85.   Triple A and/or McGraw gave access to propriety information to DOE telemarketers to assist in their incessant robocalling campaign to Plaintiff's DNCR phone number.

86.   Triple A's telemarketers have implied and actual authority from Triple A to coordinate appointment settings while in the process of effecting solicitation of auto warranty services through the use of telemarketing lead generation and calling phone numbers on the DNCR.

87.   Triple A's unregistered and unlicensed telemarketer(s), through information and belief, are located offshore and out of the jurisdiction of the United States but the identity of such telemarketers are known by McGraw.

88.   Triple A's unregistered telemarketers make auto warranty solicitation telephone calls to consumers who are listed on the DNCR at the direction and guidance of Triple A and/or McGraw.

89.    Triple A and/or McGraw are very well aware that the unauthorized phone calls being made on their behalf by DOE telemarketers are in violation of the regulations of the TCPA, but they proceed as if they are above the law and lacking internal do not call policies.

90.    Plaintiff has never had an "established business relationship" with any of the Defendants within the meaning of 47 C.F.R. § 64.1200(f)(5).

91.    Triple A's telemarketing calls as stated herein, constitute "telemarketing" within the meaning of 47 C.F.R. § 64.1200(f)(13).

92.    From the apparent authority of Triple A's telemarketer(s), spoofed the Caller ID on every call made illegally to Plaintiff's DNCR phone number.

93.    Triple A, as a seller of auto warranty services,  ratifies the illegal behavior from their unregistered telemarketers by knowing of the illegal conduct but fails, wholly and or negligently, to repudiate such illegal TCPA conduct.

94.    Triple A participated in, facilitated, directed, authorized, knew of, or willfully ignored the unlawful telemarketing calls, while knowing facts that required a reasonable person to investigate further, and approved and ratified the illegal conduct of DOE telemarketers to engage in the false and misleading tele-sales practices and unlawful telemarketing.

95.    Triple A has knowledge of and has adopted and maintained TCPA violations as part of their illegal tele-sales strategy to gain new auto warranty business.

96.    Upon information and belief, Triple A does not train its unregistered telemarketer engaged in Triple A's telemarketing on the use of Triple A's internal do not call policy (*which they failed to scrub against*) as they failed to recognize Plaintiff's DNCR cell phone number being registered since 2012.  But in actuality, Triple A does not have any type of internal do not call policy and even while Plaintiff made requests to stop calling his DNCR phone

number will have no effect. Further, the non-compliance by Triple A with and in their absence of sufficient policies and or procedures to stop calling phone numbers on their internal do not lists, national and state do not call registries while using third party telemarketers to make their auto warranty solicitation calls is a fatal flaw herein.

97. Upon information and belief, Triple A has access to a SANS account that is directly linked to the national Do Not Call Registry and allows Triple A to scrub their calling and or contact lists against the DNCR every thirty-one (31) days as required by the TCPA, but for their negligence and callous disregard, and their enjoyment of being a TCPA defendant, prefer not to implement such policy and or procedure.

98. The Better Business Bureau has illegal call complaints also listed against Triple A as listed below[7]:

(a) American Automotive Alliance spammed me via phone call. The terms presented to me during the sales call were misrepresented. On three separate occasions, I specifically asked about the annual payment, and your representative assured me that the cost would be $128.08 per year, not per month. However, upon reviewing the contract, I noticed the actual agreement states $128.08 per month, which directly contradicts what was communicated to REMOVED consider this a serious case of false advertising, and I feel that I was misled by the information .Thank you for your attention to this matter.

(b) This company took money from me and they are a scam. I want my money back as my own bank even flagged them for fraud!

(c) Im having issues with this company having my information on their call list. I am getting harassed with phone calls. They have one of the systems that will auto generate new numbers for each call, so blocking them on my device is like trying to slay a hydra. I have not been able to get in touch with anyone in that company who is capable/willing to assist me in reaching a resolution in this manner. My number has been on the Federal do not call registry since 2007. I am planning to file a report with them as well. As far as evidence I can either grab screen shots of my call list, or can get a proper hard copy of my records from my phone company as well.

---

[7] https://www.bbb.org/us/fl/fort-lauderdale/profile/auto-warranty-plans/american-automotive-alliance-llc-0633-90602762/complaints (last visited on March 5, 2026)

**Defendant's Response to Plaintiff's Notice of Intent to File TCPA Suit.**

99.     Plaintiff and Defendant's counsel, Chris Meier, engaged in conversation shortly afterwards of Triple A receiving Plaintiff's Notice of Intent Letter.  Counsel provided the following alleged opt-in minus the phone number alleged to have called Plaintiff:

URL: https://autoquoteguide.com [autoquoteguide.com]

Date: 10/22/2025 at  4:41:32 PM

IP Address: 2607:fb91:490d:671e:b5fa:55f:a87e:8a8b

Name: Timothy Aguilar

Address: 2807 Randolph Rd        Pasadena        TX        77503

(832) 689-7311

Email Address:    aguilar65@gmail.com

Rent/Own: Own

Carrier: Liberty Mutual

Years of coverage: 2-3 years

Male/Female: Male

Age: 60

Year: 2020

Model: Lincoln

Make: Navigator

100.    While such integral  information is premised on the clear attempt to avoid TCPA liability – Plaintiff does not own a Lincoln Navigator, nor does he have a carrier named Liberty Mutual,  nor does Plaintiff use an email as listed "aguilar65@gmail.com - in a twisted version of facts and fate - this same email address that Triple A's counsel provided to

Plaintiff - has also been mentioned and used by the telemarketers and or lead generators that have bestowed a tsunami of illegal final expense calls to Plaintiff's DNCR phone number. Which clearly indicates that Triple A's telemarketers are also the TCPA perps that have been calling Plaintiff's DNCR phone number.  Plaintiff also has never searched the URL address of autoquoteguide.com as listed above.

## VICARIOUS LIABILITY OF DEFENDANT TRIPLE A FOR CALLS PLACED BY DOE TELEMARKETERS UPON TRIPLE A'S BEHALF

101.    Triple A is "vicariously liable" under federal common law principles of agency for TCPA violations committed by third-party telemarketers, such as the overseas marketers employed by them. *See In re Joint Pet. filed by Dish Network, LLC*, 28 F.C.C.R. 6574, 6582 (2013).

102.    An agency relationship was created when Triple A and/or McGraw hired the DOE telemarketers who acted as Triple A's agent when they initiated illegal telemarketing calls to Plaintiff's DNCR cell phone.

103.    Triple A exercised control over the DOE telemarketers by providing qualifying restrictions, geographic locations requirements and auto status criteria of the solicited consumers and dictating and or instructions as to what hours to make the illegal vehicle contract sales calls, and, lastly, targeting consumers on the national DNCR.

104.    Triple A blessed it's unregistered telemarketers with apparent authority to make the telemarketing calls mentioned herein.

105.    Triple A allowed it's telemarketers that called Plaintiff's DNCR phone number to act as an agent and bestowed upon them (telemarketer)  actual authority to market their auto warranty services in any manner or fashion, whether  by legal or illegal means even if violating a federal statute was required.

## VIOLATIONS OF THE TEXAS BUSINESS AND COMMERCE CODE § 302.001

106. Realizing the egregious and particular harm to Texas residents that unsolicited telemarketing calls to citizens of this great State of Texas, the Texas Legislature passed § 302.101 of the Texas Business & Commerce Code ("TBCC"), which requires all "sellers" or "salespersons" making "telephone solicitations" inducing a person to "purchase, rent, claim, or receive an item," which includes "a service" to register as such with the Texas Secretary of State. TEX. BUS. & COM. CODE § 302.001 *et seq.*

107. The burden of proof lies on a defendant to show it registered each business location to prove its licensure or on proving an exemption. *Id.* § 302.051 Triple A nor McGraw qualify for an exemption under §302.053.

108. Auto warranty and or vehicle service contracts are "items" and or "services" for which there is no exemption to the Code. § 302.051 The auto warranty solicitations that Triple A's telemarketer's, agent(s), sub-agents and or representatives, that called Plaintiff's DNCR phone number on the times and dates listed herein, in violation of state and federal laws, do not hold a registration within the State of Texas.

109. Triple A telemarketers are not registered with the Texas Secretary of State as required and mandated by the Business & Commerce Code and as expected if they are to solicit their auto warranty in Texas. *Telephone Solicitors Search,* TEXAS SECRETARY OF STATE, https://direct.sos.state.tx.us/telephone/TelephoneSearch.asp (querying Defendants Triple A, Ronnie McGraw and their agents, Cesar Miranda, Frank Aldana, Frank Flores).

110. TBCC § 302.101 provides a private cause of action. A violation of Chpt. 302. "is a false, misleading or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable

as such: "A public or private right or remedy prescribed by Subchapter E, Chpt. 17 may be used to enforce Chapter 302." Tex. Bus. & Com. Code § 302.303.

111. The use or employment by any person of a false, misleading ("Dealer Services") or deceptive act or practice causes 'economic damages or damages for mental anguish. Tex. Bus. & Com. Code § 17.50.

112. Under the provisions of Tex. Bus. & Comm. Code § 302.302, plaintiff is allowed to seek damages of up to $5000.00 dollar per violation of § 302.101.

## BASIS FOR LIABILITY

113. All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

114. Even if Defendants Triple A or McGraw did not personally make the TCPA violating calls to Plaintiff they are liable for the TCPA violations under the following theories of vicarious liability; actual authority, apparent authority, or ratification.

## ACTUAL AUTHORITY

121. All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

122. Defendants authorized and hired their telemarketer to generate prospective customers through illegal telemarketing calls

123. Accordingly, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." See *In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995)

124 In their January 4, 2008, ruling, the FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *Id.* (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

125. More specifically, the May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. 28 FCC Rcd at 6586 (¶ 34).

126. Triple A's telemarketer, solicited Plaintiff on behalf of Triple A and/or McGraw. Accordingly, their telemarketer(s) had Triple A and McGraw's actual authority to solicit Plaintiff through illegal telemarketing calls.

## **APPARENT AUTHORITY**

127. All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

128. The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct. 28 CC Rcd at 6592 (¶ 46).

129. Defendant Triple A authorized their unregistered telemarketer to generate prospective business for Triple A through illegal telemarketing and placing calls to DNCR phone numbers regardless of the consequences.

130. Doe telemarketer called and solicited Plaintiff for auto warranty services on behalf of the Defendants. The integration of their sales efforts was so seamless that it appeared to Plaintiff that Doe telemarketer and Defendants appeared to be acting together as the same company.

131. Plaintiff reasonably believed and relied on the fact that Doe telemarketer had received permission to sell, market, and solicit the services of Defendant Triple A.

132. As a direct and proximate result of Triple A's telemarketer illegal phone calls – which were made on behalf of and with the apparent authority of the Defendants, Plaintiff suffered actual damages, including his time to answer the violating calls, depleted battery life and storage, wasted time, invasion of privacy and the nuisance of receiving the calls.

## RATIFICATION

133. All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

134. Defendants knowingly and actively accepted business that originated through the illegal calls placed by their telemarketer(s).

135. By accepting and/or intiating these contacts and/or benefits with the Plaintiff, Triple A's unregistered and unlicensed telemarketer(s) "manifest[ed] assent or otherwise consent[ed] . . . to act" on behalf of the Defendants, as described in the Restatement (Third) of Agency.

136. Unregistered telemarketer(s) called Plaintiff to solicit him for auto warranty products and/or services on behalf of Triple A.

137. Defendant Triple A was readily available to receive Plaintiff's auto warranty as a new prospective client from their telemarketer's acting upon their behalf and as clearly indicative in Exhibit 4.

138. Defendants' ratified their telemarketers TCPA violations by knowingly accepting the live transfer of the call despite the fact that the sale was generated through illegal telemarketing calling a phone number of the national DNCR.

140. As a direct and proximate result of Triple A's telemarketer's illegal phone calls, Plaintiff suffered actual damages, including his wasted time to answer the violating calls, depleted battery life, invasion of his privacy and the nuisance of receiving the calls

## PERSONAL LIABILITY OF DEFENDANT MCGRAW

141. All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

142. Upon information and belief, Ronnie McGraw refuses to take any action to stop or curtail the unlawful sales practices and illegal unauthorized phone calls because these practices benefit them financially.

143. "If the officer directly participated in or authorized the statutory violation, even though acting on behalf of the corporation, she may be personally liable. See *United States v Pollution Serv. Of Oswego, Inc.*, 763 F.2d 133, 134-135 (2nd Cir.1985)

144. The "well-settled" tort rule provides that "when corporate officers directly participate in or authorized the commission of a wrongful act, even if the act is done on behalf of the corporation, they may be personally liable." *General Motos Acceptance Corp. v. Bates*, 954 F.2d 1081, 1085 (5th Cir. 1992). The Fifth Circuit has elaborated that "the thrust of the general [tort] rule is that the officer to be held personally liable must have some direct, personal participation in the tort, as

where the defendant was the 'guiding spirit' behind the wrongful conduct....or the 'central figure' in the challenged corporate activity." *Mozingo v. Correct Mfg.Corp.*, 752 F.2d 168, 174 (5th Cirt. 1985) (citing *Escude Cruz v. Ortho Pharmaceutical Corp.*, 619 F. 2d 902, 907 (1st Cir.1980)) (citing *Texas v. American Blastfax, Inc.*, 164 F. Supp. 2d 892 (W.D. Tex. 2001)

145. Upon information and belief, at all times material to the Complaint, acting alone or in concert with others, Defendant McGraw has formulated, directed, controlled, had the authority to control, or participated in the illegal acts and practices of Defendant Triple A including the acts or practices set forth in this Complaint.

146. Upon information and belief, Defendant McGraw is a managing and direct principal and operator of Defendant Triple A, who controls the day-to-day operations of Defendant Triple A marketing and directed their representatives, employees, agents, salespersons, and or telemarketers to make TCPA violating phone calls to solicit Triple A's auto warranty services.

147. Upon information and belief, Defendant McGraw is not merely a bystander and is the cunning and resourceful mastermind that schemed, planned, directed, initiated, and controlled the illegal and fraudulent behavior. Using the trademark of another entity (the real Triple AAA) to solicit auto warranties and deceive consumers into believing there is an affiliation trumps all type of deceptiveness defined in the jurisprudence of this country.

148. Upon information and belief, Defendant McGraw is well aware that his conduct violates the TCPA and refused to alter his behavior. Defendant McGraw is a principal of Defendant Triple A and the only person with the power to make the unlawful, fraudulent, and unethical behavior stop. Yet, Defendant McGraw has taken no steps to stop the behavior because this illegal behavior benefits Triple A financially.

**149**. Defendant McGraw should be held jointly and severally liable for any and all TCPA violations because he actually committed and or directed the conduct that violated the TCPA and actively oversaw and directed this conduct to the telemarketers that he contracted with.

**150**. Defendant McGraw should be held liable because to do otherwise would simply allow him to dissolve Defendant Triple A and set up a new corporation and repeat his conduct thus frustrating the purposes of the TCPA.

## INJURY, HARM, DAMAGES AND ACTUAL DAMAGES AS A RESULT OF THE ILLEGAL CALLS

**151**. All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein

**152**. The telemarketers illegal telemarketing calls made upon behalf of Triple A, non-compliance with sufficient DNCR policies and or procedures by Triple A and McGraw, caused injuries to Plaintiff by causing the very harm that Congress sought to prevent a "nuisance and invasion of privacy" with each and every call that have been placed and or have delivered to Plaintiff's DNCR listed phone number.

**153**. Triple A and or their agent(s) TCPA violation calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cell phone.

**154**. By placing these calls at bar, to plaintiff's residential cellphone number, Triple A has violated the statutory right to Plaintiff's privacy and caused him to suffer damages that are recognized by statute, i.e. invasion of privacy, seclusion, disruption and distraction into plaintiff's work week, nuisance, loss of concentration, caused anxiety, temporary loss of use of Plaintiff's cellphone, causing Plaintiff aggravation of these nuisance & intrusive calls while plaintiff is communicating with family and friends during the day including weekends, reduced storage on his cellphone, and, the aggravation that accompanies unsolicited robocalls.

## COUNT I
### Telephone Consumer Protection Act
### Federal Do-Not-Call-Rules
### Violations of 47 U.S.C. § 227( c)(5) & 47 C.F.R. § 64.1200( c)
### (Against All Defendants)

155. All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

156. The foregoing acts and omissions of named Defendant and/or their affiliates, agents, DOE telemarketing companies, and/or persons or entities acting on behalf of Defendants constitute numerous and multiple violations of the FCC regulations by making a multitude of telemarketing solicitations to a consumer on the National Do Not Call Registry within a twelve (12) month period in violation of 47 C.F.R. § 64.1200(c )(2).

157. Defendants agent and or telemarketers sent, initiated, made on Triple A's behalf the illegal calls to Plaintiff's residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the solicitation phone calls, in violation of 47 U.S.C. § 227 (c )(3)(F) and 47 C.F.R. § 64.1200( c)(2).

158. Plaintiff was statutorily damaged under 47 U.S.C. § 227(c )(3)(F) by Defendant's agent's calls described above, in the amount of $500.00 per phone call.

159. Plaintiff is entitled to an award of up to $1,500 in damages for each knowing and willful violation of 47 U.S.C. § 227(c )(3)(F).

## COUNT II
### Failure to Implement Internal Do-Not-Call Policies
### 47 U.S.C. § 227(c ) and 47 C.F.R. §64.1200(d)
### (Against All Defendants)

160. All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

**161.** The FCC regulations prescribed under Section 227(c) require companies like Defendant Triple A, who engage in telemarketing to institute "procedures for maintaining a list of persons who request not to receive telemarketing calls/texts on or behalf of that person or entity." *See* 47 C.F.R. § 64.1200(d).

**162.** These procedures must meet several minimum standards, including, but not limited to:

> **(6) Maintenance of do-not-call lists.** A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls/text. A do-not-call request must be honored for five (5) years from the time the request is made.

**163.** Triple A failed to maintain, adapt, and/or implement these minimum basic standards and or procedures by their telemarketers consistently calling on their behalf, while Plaintiff repeatedly requested that defendant(s) telemarketers, their agents, DOE telemarketers and representatives stop calling his DNCR listed phone number, such indicates that Triple A has an absence of sufficient polices and/or procedures in place.

**164.** In addition, the TCPA allows the Court to enjoin Defendant's violations of the TCPA's regulations prohibiting calls to phone numbers that should have been placed on Defendant's internal do not call list. See 47 U.S.C. §§ 227(c)(5)(A).

**165.** By making constant auto warranty solicitation calls to the Plaintiff's DNCR number, which should have been placed on Defendant's agent internal do not call list after repeated do not call requests, Defendant Triple A violated the TCPA, including, but not limited to, 47 U.S.C. § 227(c) and the TCPA's corresponding regulations.

**166.** Triple A's DOE telemarketers should have known, after constant repeated requests that Plaintiff did not wish to receive a constant stream of auto warranty calls. Accordingly, the violations were willful.

167. As a result of the above violations of the TCPA, Plaintiff has suffered damages as set forth above entitling Plaintiff to an award of statutory, actual and treble damages.

**Count III**
**(Violations of the Texas Business & Commerce Code § 302.101)**
**Failure to obtain a Telephone Solicitation Registration Certificate**
**(Against All Defendants)**

168. All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

169 The foregoing acts and omissions of the telemarketer's, for Defendant Triple A and/or their agents and or affiliates and/or other persons or entities acting on behalf of Triple A constitute multiple violations of the Texas Business & Commerce Code § 302.101 by making auto warranty solicitation calls to plaintiff's residential number despite not holding a registration certificate and bond on file with the Texas Secretary State of Texas.

170. Defendant's violations named in this Count were negligent, willful and or knowing.

171. As a result of Triple A's telemarketer's and/or its affiliates, agents and/or other persons or entities acting on behalf of Triple A, are violations of the Tex. Bus. & Comm. Code § 302.101 are presumptively entitled to a civil penalty of $5,000.00 for each violation under § 302.302(a) plus all reasonable costs of prosecuting this action.

**PRAYER FOR RELIEF**

Wherefore, Plaintiff, Timothy Aguilar, respectfully prays that Defendant Triple A and McGraw herein be cited according to law to appear and answer herein, and:

  a. An award of statutory damages of $500.00 for each violation of the TCPA 47 U.S.C. § 227 *et seq.* and 47 C.F.R. § 64.1200; and,

  b. An award of $1500.00 per each violative telephone call or text that was committed knowingly or willfully.

  c  Additional treble damages of $1,500.00 per violative telephone call or text as provided under 47 U.S.C. § 227(c )(5)(C);

34 | Page

d. Statutory damages of $5,000 per violation (as provided under §302.101 of the Texas Business & Commerce Code);

e All reasonable  witness fees, witness fees, discovery investigation fees, court costs and other litigation costs incurred by Plaintiff pursuant to §302.302(a) of the Texas Business & Commerce Code;

Any other relief this Honorable Court deems appropriate.

**DEMAND FOR JURY TRIAL**

Please take notice that Plaintiff, Timothy Aguilar, demands a jury trial in this case as allowed by the 7th Amendment to the United States Constitution.

## DOCUMENT PRESERVATION DEMAND

Plaintiff demands that Defendants Triple A and McGraw, DOE Telemarketers and their agents and affiliates take affirmative steps to preserve all call data records (CDR), lists, recordings as indicated in the telemarketing calls received by Plaintiff, electronic databases or other itemizations and or documents associated with the allegations herein, including all records, lists including Workforce Management software, CCaaS, IVR, Oracle, Speech Analytic, Five9, Genesys, Salesforce, Talkdesk or other itemizations in the possession of any vendors, individuals, and/or companies contracted, hired, or directed by Defendant to assist in sending the alleged robocalls and text messages and or communications to Plaintiff named herein to his DNCR phone number as listed herein.

Respectfully submitted,

Tim Aguilar
2807 Randolph Road
Pasadena, Texas 77503
proselitigationtx@gmail.com
832-689-7311